IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JAMES HAMPTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 20-cv-1300-DWD |
| | ) |
| FAIYAZ AHMED, | ) |
| LORIE CUNNINGHAM, | ) |
| PAM WARD, | ) |
| WARDEN OF LAWRENCE | ) |
| CORRECTIONAL CENTER, | ) |
| | |
| Defendants. | |

## MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Now before the Court is Plaintiff's Motion to Set Aside the Settlement (Doc. 115). The issue presented is whether the Plaintiff is free to unilaterally rescind an agreement to settle his lawsuit because he was unaware at the time of mediation that the State of Illinois must enforce a lien for the recovery of unpaid child support. For the reasons stated below, the Court believes that the Plaintiff may not unilaterally rescind the agreement to settle.

I. BACKGROUND

Plaintiff James Hampton, an inmate of the Illinois Department of Corrections (IDOC) currently incarcerated at Pinckneyville Correctional Center, brings this action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights while at Lawrence Correctional Center. Plaintiff's claims concern alleged deliberate indifference to his need for medical treatment for a hernia, as well as associated retaliation.

The parties were referred to mediation. (Doc. 93). On November 17, 2023,

mediation was conducted, and the claims against F. Ahmed, Cunningham and the Warden of the Lawrence Correctional Center were resolved. (Doc. 103).[1] The report from the Mediator indicated that additional time was required to consummate the settlement and the Court entered an Order allowing for additional time. (Doc. 104).

On February 6, 2024, Defendant Ahmed's Counsel filed a Status Report indicating that Plaintiff signed a release and that payment had been sent to Plaintiff. (Doc. 114). However, on February 9, 2024, Plaintiff filed his "Status Report" indicating that he had received a release from Ms. Fuller, attorney for Defendants Warden and Cunningham, but that he would not sign it because it contained a "clause" indicating "the state comptroller could withhold parts or all of the settlement award for back child support." (Doc. 115).[2] Plaintiff also made allegations that he was "misled" and "blindsided" by defense counsel because he was unaware that the "clause" would be contained in a release. *(*Id.*)*

Given the allegations, and the absence of a specific request for relief from Plaintiff, the Court, on February 27, 2024, invited the parties to give their respective positions regarding a possible rescission of the settlement agreement. (Doc. 119).[3] Defendants Warden and Cunningham filed a response indicating that they did not object to Plaintiff's motion but did not specifically indicate whether they agreed to rescind the settlement or ask for that relief. (Doc. 129). Plaintiff responded and reiterated his desire to rescind the

---

[1] Defendant Pamela Ward moved to opt out of the Mediation session (Doc. 101) and, with the consent of the parties, her motion was granted. (Doc. 102).

[2] The Court interprets Plaintiff's "Status Report" as a Motion to Set Aside the Settlement (Doc. 116).

[3] The Court's order allowed the parties to respond, if they wished, and, under the impression that the parties both sought recission, that the Court indicated that it would treat the settlement agreement as rescinded if no party responded (Doc. 119).

settlement, indicating that he was "ambushed" by Counsel. (Doc. 130).

On April 18, 2024, the Court ordered a transcript of the post-mediation confirmation of the terms of settlement. (Doc. 125). The Court has now reviewed that transcript. (Doc. 127).

## II. DISCUSSION

"State contract law governs issues concerning the formation, construction, and enforcement of settlement agreements." Beverly v. Abbott Lab'ys, 817 F.3d 328, 333 (7th Cir. 2016) (citing Sims–Madison v. Inland Paperboard & Packaging, Inc., 379 F.3d 445, 448 (7th Cir.2004)). "Under Illinois law, the existence of a valid and enforceable contract is a question of law when the basic facts are not in dispute." Id. (citing Echo, Inc. v. Whitson Co., 121 F.3d 1099, 1102 (7th Cir.1997). "Oral settlement agreements are enforceable under Illinois law if 'there is clearly an offer and acceptance of the compromise and a meeting of the minds as to the terms of the agreement.'" Dillard v. Starcon Intern., Inc., 483 F.3d 502, 507 (7th Cir. 2007) (quoting Wilson v. Wilson, 46 F.3d 660, 666 (7th Cir. 1995)). The essential terms must be "definite and certain" so that a court can ascertain the parties' agreement from the stated terms and provisions. Quinlan v. Stouffe, 355 Ill.App.3d 830, 823 N.E.2d 597, 603 (2005). Whether a "meeting of the minds" occurred depends on the parties' objective conduct, not their subjective beliefs. Paxton–Buckley–Loda Educ. Ass'n, IEA–NEA v. Ill. Educ. Lab. Rels. Bd., 304 Ill.App.3d 343, 710 N.E.2d 538, 544 (1999).

Neither party suggests that there was no "meeting of the minds," and any analysis of whether an agreement was assented to requires nothing more than a review of the transcript made following the mediation session. There, it is revealed the Mediator announced the parties had settled the matter and went on to itemize the terms of the

settlement between Plaintiff and each of the Defendants. (Doc. 127, pp. 2-3). The Mediator then confirmed with Plaintiff that he agreed to the stated terms, that there were no additional principal terms, and that he accepted the agreement of his own free will, without coercion. (Id.).

Beyond the transcript, the record also supports a finding that the parties' conduct demonstrates there was a meeting of the minds to settle this matter. Plaintiff accepted payment after executing a release in favor of Defendant Ahmed, consistent with the content found in the transcript. (Doc. 114). And Plaintiff lodged no objections to the release tendered to him by Defendants Cunningham and the Warden of Lawrence Correctional Center, except as it concerns child possible support arrearages. (Doc. 115). It is clear the parties reached an agreement to settle the case by agreeing on the principal or operative terms.

Plaintiff claims, however, that he was "not informed" at mediation about the possibility that the Illinois Comptroller might intercept a part of his settlement proceeds (*Id.* at 1). Although not specified, Plaintiff seems to be referring to the administrative lien on personal property for past-due child support created by the Public Aid Code, 305 ILCS § 5/10-25.5. In pertinent part, it provides:

> (a) *Notwithstanding any other State or local law to the contrary*, the State shall have a lien on all legal and equitable interests of responsible relatives in their personal property, including any account in a financial institution as defined in Section 10-24, or in the case of an insurance company or benefit association only in accounts as defined in Section 10-24, in the amount of past-due child support owing pursuant to an order for child support entered under Sections 10-10 and 10-11 of this Code, or under the Illinois Marriage and Dissolution of Marriage Act, the Non-Support of Spouse and Children Act, the Non-Support Punishment Act, the Uniform Interstate Family Support Act, or the Illinois Parentage Act of 1984, or the Illinois

Parentage Act of 2015.

§ 5/10-25.5(a) (emphasis added).

The Illinois Department of Public Aid is burdened with the obligation to "enforce its lien against the responsible relative's or payor's personal property." § 5/10-25.5(d). By operation of law, the proceeds, whether as a result of a settlement or as a result of a judgment following trial, are made subject to the attachment of lien that must be enforced by the Department. The language of this provision creates something in the nature of a "super priority lien" in that it provides "[n]otwithstanding any other State or local law to the contrary, the State shall have a lien on all legal and equitable interests of responsible relatives in their personal property . . . in the amount of past due child support." The lien, and the corresponding power to intercept "property" coming to a party owing back child support, exists apart from the terms of a release. It would follow then that, regardless of whether the lien language was included in the release document itself, the lien for any past-due child support would still attach to settlement proceeds. And, likewise, if Plaintiff were to be awarded a recovery following trial, the lien would still attach and any proceeds he would receive would be reduced by the amount of any unpaid child support.

Nevertheless, Plaintiff suggests the existence of duty on the part of defense counsel to advise him during the course of the settlement negotiations that the Illinois Comptroller might intercept proceeds from settlement. Plaintiff offers no authority for that thinking. Rather, the duty of an attorney to be a zealous advocate and negotiator is owed to *her* client. (*See generally* Ill. Rules of Prof'l Conduct of 2010, Art. VIII). There is no corresponding duty owed to an opposing party. Nor is there a duty imposed upon Defendants' attorney to "inform" Plaintiff on the law or its effect, if any, on Plaintiff's net

recovery. And, while there is a general duty of an attorney to be honest in her dealings, there is nothing contained in the record to suggest that Counsel or the Mediator was dishonest toward Plaintiff. That being so, the question becomes whether this Court may enforce the agreement to settle despite Plaintiff's desire to rescind it.

A "district court possesses the inherent or equitable power summarily to enforce an agreement to settle a case pending before it." *Wilson*, 46 F.3d at 664 (collecting cases). While this power exists, it must be used only to enforce completed agreements. *Id.* Thus, where the material facts concerning the existence or terms of an agreement to settle are in dispute, a district court should conduct an evidentiary hearing. *Id.* As noted, there is no dispute that an agreement to settle was struck, and the objective evidence in the record confirms that the parties were able to reach a meeting of the minds. Therefore, there is no need for an evidentiary hearing here.

The Court believes that the agreement to settle was, in fact, completed. The only obstacle to the consummation of the settlement was that Plaintiff learned that his child support obligations, if any, could affect his net recovery from this lawsuit. A "unilateral mistake," so as to permit recission, occurs when there is an apparently valid contract, but by reasons of mistake of fact by one of the parties, not due to his negligence, the contract's terms end up being different than what was intended. *See Brzozowski v. N. Tr. Co.*, 248 Ill. App. 3d 95, 618 N.E.2d 405, 409 (1993) (citations omitted). A party seeking rescission based on a unilateral mistake must show by clear and convincing evidence that (1) the mistake was material; (2) the mistake is so significant as to make enforcement unconscionable; (3) the mistake occurred despite the exercise of due care by the party seeking rescission; and (4) rescission will place the other party in the status quo. *Siegel v. Levy Org. Dev. Co.*, 153 Ill. 2d

534, 607 N.E.2d 194, 200 (1992).

Neither the statutory lien nor Plaintiff's ignorance of it is material for the purposes of recission. As noted, the lien functions by operation of law, not by its acknowledgment in a release of liability. Plaintiff settled for a sum certain which reflects his assessment of the value of his claims. That value does not change with Plaintiff's disappointment that he might receive a net recovery different than anticipated. And even if knowledge of the lien is material, the mistake is not so significant as to make enforcement unconscionable. The lien will operate as to funds from collection on a money judgment just as it would on funds from a settlement. There is no indication in the record or Plaintiff's allegations that his unilateral mistake warrants recission of the settlement agreement.

Accordingly, the Court finds that the settlement agreement entered into between the parties is complete, valid and enforceable. The Court further finds that the Plaintiff's Motion to Set Aside should be **DENIED**.

### III.   DISPOSITION

Plaintiff's Motion to Set Aside the Settlement (Doc. 15) is **DENIED**. The parties are directed to file with the Court a **Status Report** on or before September 3, 2024, setting forth the status of the consummation of the settlement.

**SO ORDERED.**

Dated: August 1, 2024

_____
DAVID W. DUGAN
United States District Judge