IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JAMES HAMPTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 20-cv-1300-DWD |
| | ) |
| FAIYAZ AHMED, | ) |
| LORIE CUNNINGHAM, and | ) |
| PAM WARD, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

**DUGAN, District Judge:**

Plaintiff James Hampton, an inmate of the Illinois Department of Corrections (IDOC) currently incarcerated at Pinckneyville Correctional Center ("Pinckneyville"), brings this action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights while at Lawrence Correctional Center ("Lawrence"). The only remaining claim is against Defendant Ward and concerns alleged deliberate indifference for allowing Plaintiff to be handcuffed behind his back for several hours despite knowledge of Plaintiff's abdominal hernia and Plaintiff advising them he was in pain.[1] Defendant Ward opted out of participating in mediation and filed her motion seeking summary judgment and memorandum in support. (Docs. 101; 110; 111). The Plaintiff

---

[1] Defendants Ritz, Shah and Wexford were granted Summary Judgment on their motion (Doc. 71) and Defendant Ahmed was granted summary judgment only on Claim 5. Plaintiff's claims against Ahmed, Cunningham and the Warden of Lawrence were resolved at mediation.

filed a response. (Doc. 117). For the reasons below, the Court will grant Defendant Ward's motion. (Doc. 110).

## BACKGROUND

Plaintiff initiated this lawsuit by filing a complaint in December of 2020. (Doc. 1). Generally, Plaintiff's allegations relate to Ward for allowing Plaintiff to be handcuffed behind his back for several hours despite knowledge of Plaintiff's abdominal hernia and Plaintiff advising them he was in pain.

The parties agree that there are only two grievances concerning the subject matter of this lawsuit that were properly filed and fully exhausted at the institutional level, and with the Administrative Review Board ("ARB"). The first grievance does not address the conduct of Ward. The second grievance that was fully exhausted is grievance 3-19-35, which was filed on February 27, 2019. (Doc. 72-1, pp. 47-49). The factual allegations in the grievance span more than three pages, so the Court will summarize as follows: Plaintiff alleges in the grievance that during an Orange Crush shakedown on February 27, 2019, he was handcuffed behind his back despite his insistence that he should have a medical permit for double handcuffs, used behind his back. He alleges that a nurse checked his files for a permit but did not locate it. As a result of the cuffing, his single hernia spread to five hernias, which caused great pain and further damage to his pre-existing condition. On March 5, 2019, the Warden deemed the grievance not an emergency. (Doc. 72-1 at 47). On April 18, 2019, the grievance counselor recommended denial of the grievance because Plaintiff was apparently given medical treatment, and his files revealed no special handcuff permit. (Doc. 72-1 at 46). The Warden concurred on

April 22, 2019, and on April 26, 2019, Plaintiff appealed to the ARB. The ARB denied the grievance on May 10, 2019. (Doc. 72-1 at 45).[2]

In support of his Complaint, and in response to summary judgment, Plaintiff submitted significant grievance documentation, as well as medical records. To give context for the issue of exhaustion, the Court notes that in the Complaint, Plaintiff alleged that he saw Dr. Ahmed on August 23, 2018, September 11, 2018, and October 11, 2018. (Doc. 1, p. 3). Medical charts that Plaintiff provided corroborate these dates—there are notes in Plaintiff's chart from August 23, 2018 (*Id.* at 61), September 11, 2018 (*Id.* at 62-64), and medical notes from October 11, 2018 (*Id.* at 65-66). There are also notes from November 26, 2018, as well as a medical special services referral for an ultrasound of Plaintiff's abdomen and umbilical area, signed by Dr. Shah. (*Id.* at 67-68). Drs. Shah and Ritz approved the ultrasound recommendation on December 3, 2018. (*Id.* at 69). An ultrasound was conducted on January 10, 2019, which noted a small hernia that contained fat and nonobstructed bowel. (*Id.* at 72). On January 23, 2019, Dr. Shah referred Plaintiff to a general surgeon (*Id.* at 74), and on January 31, 2019, Drs. Ritz and Shah approved the referral (*Id.* at 76). On February 27, 2019, an Orange Crush shakedown occurred in Plaintiff's housing unit, at which time Plaintiff was handcuffed behind his back for approximately 3 hours. (*Id.* at 15-18). He alleges that he sustained damage to his hernia based on this incident. (*Id.* at 16, ¶ 59). Specifically, before the incident he had one hernia, and after the handcuffing he had multiple hernias. (*Id.*). Also on February 27, 2019,

---

[2] Although the parties identified many more grievances that were filed during the timeframe of the events in the complaint, the Defendants allege, and the Plaintiff does not refute, that none of the additional grievances were ever fully exhausted.

Plaintiff was seen by a general surgeon as scheduled by Dr. Shah's referral. A laparoscopic repair was recommended. (*Id.* at 81). Plaintiff received surgery on May 29, 2019. (Doc. 76, p. 136).

## CONCLUSIONS OF LAW

A. Legal Standards

Summary judgment is proper if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In determining a summary judgment motion, the Court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted). Courts generally cannot resolve factual disputes on a motion for summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656 (2014) ("[A] judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.")

## ANALYSIS

Relative to Defendant Ward, the Plaintiff alleges in his Complaint that "Ward called the healthcare unit to verify not the Plaintiff's herein complained about conditions of having a[n] abdominal hernia in that the Plaintiff should've [not] been handcuff[ed] to the back, with that . . . instead Nurse Ward call[ed] to verify a front handcuff permit totally disregarding the fact . . . that the plaintiff did have a medical furlough in just a few hours." (Doc. 1, p. 7). He further alleges in his Complaint that "had it also not been for

[Ward's] failure to only substantiate . . . the fact that Plaintiff had been previously diagnose[d] with a[n] abdominal, navel hernia," she would have learned that Plaintiff "should not have been handcuffed with both hands behind [his] back." (*Id.* at 8).

There is no in dispute that on February 27, 2019, Plaintiff was placed in handcuffs during a shakedown of his cell house and escorted to another location known as the "chow hall". (Doc. 111-1, p. 11) Plaintiff claims that while he was handcuffed behind the back, he had intense shoulder pain and, after about two- and one-half hours, he started feeling pain in the area of his navel, followed by a "pop sound". (*Id.* at 8). It was then that he told a guard of his pain and represented that he had a special handcuffing permit. (*Id.* at 8-9). According to Plaintiff, a guard known to him to be Lieutenant Buchanan then stood him up and asked Defendant Ward[3] to determine whether Plaintiff had a "front cuff permit". (*Id.* at 9).[4] Defendant Ward then called medical and related that she was told that Plaintiff had not been provided a medical permit for alternative cuffing by a doctor. It is also undisputed that as of February 27, 2019, Plaintiff did not, in fact, have a medical permit given by a physician that would prescribe that he be either double cuffed or cuffed in front of his body. (Doc. 111-1, 22:23-23:1)

Plaintiff asserts in his response to the summary judgment motion Defendant Ward "failed to use her medical judgment to inform security staff of Plaintiff's serious medical

---

[3] Plaintiff testified that he had never been treated by Defendant Ward before February 27, 2019. (Doc. 111-1, p. 5)
[4] Plaintiff's testimony is conflicting and vague in the sense he testified that he is "pretty sure" that message about his having a permit was "relayed" to Defendant Ward because "she came back talking to the Lieutenant telling him I don't have a permit." (Doc. 111-1, p. 13). Later in his deposition Plaintiff testified that "all I know is I relayed it to not only the nurse but I also relayed it to the security staff." (*Id.* at 15). However, in his response to the Defendant Ward's motion for summary judgement he states that it was Lieutenant Buchanan who called Defendant Ward to inquire into whether he had a special cuffing permit. (Doc. 117, p. 5).

condition" (Doc. 117, p. 5) and that she never inquired as to whether Plaintiff had a hernia, which shows a "true state of mind of total disregard of a serious medical condition" (Doc. 117, p. 7) Finally, Plaintiff claims that Defendant Ward's "failure to act upon the Plaintiff's serious medical conditions to treat or even examine the Plaintiff's complained about hernia abdominal area, nor call some kind of medical emergency did contribute to 4 new hernias popping out of Plaintiff's abdominal wall, being left handcuffed with a serious condition." (Doc. 117, p. 7)

Defendant Ward contends that whether Plaintiff's claim arises out of his belief that she should have ensured that Plaintiff was cuffed in any manner than behind his back or that she failed to intervene in correctional staff's cuffing of Plaintiff behind his back, she as a nurse, lacked authority to effectively issue a cuffing permit and likewise lacked the authority to direct correctional officers to depart from protocol and cuff him alternatively. (Doc. 111, pp. 1-2).

A prison official violates the Eighth Amendment by acting with subjective "deliberate indifference" to an inmate's "objectively serious" medical condition. *Reck v. Wexford Health Sources, Inc.*, 27 F.4th 473, 483 (7th Cir. 2022) (citing *Sherrod v. Lingle*, 223 F.3d 605, 610 (7th Cir. 2000)). "To determine if the Eighth Amendment has been violated in the prison medical context, we perform a two-step analysis, first examining whether a plaintiff suffered from an objectively serious medical condition, and then determining whether the individual defendant was deliberately indifferent to that condition." *Petties v. Carter*, 836 F.3d 722, 727–28 (C.A.7 (Ill.), 2016)

"A delay in treating non-life-threatening but painful conditions may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Arnett v. Webster*, 658 F.3d 742, 753 (7th Cir. 2011). Whether delay rises to the level of deliberate indifference depends on how serious the condition is and the ease of treatment. *See Goodloe v. Sood*, 947 F.3d 1026, 1031–32 (7th Cir. 2020) (holding that a three-month delay in referring an inmate to an outside specialist could establish deliberate indifference where the inmate was in substantial pain); *Gutierrez v. Peters*, 111 F.3d 1364, 1374 (7th Cir. 1997) (affirming dismissal where inmate waited six days to see a doctor for an infected cyst). But "[e]vidence that the defendant responded reasonably to the risk, even if he was ultimately unsuccessful in preventing the harm, negates an assertion of deliberate indifference." *Rasho v. Jeffreys*, 22 F.4th 703, 710 (7th Cir. 2022).

The allegations contained in the Plaintiff's Complaint (Doc. 1) that Defendant Ward failed to use her "medical judgement" and failed to "substantiate" that Plaintiff had an abdominal injury do not suggest deliberate indifference. Assuming Defendant Ward was aware of Plaintiff's hernia condition, the allegations in their best light make a case for only possible negligence or malpractice on Defendant Ward's part. The failure to do something when the standard of care or appropriate medical judgment calls for a specific action is negligence or malpractice. Negligence and malpractice do not necessarily implicate Eighth Amendment concerns. Rather, our Constitution's proscription against deliberate indifference in a prison setting requires something more than negligence or even medical malpractice. "[S]omething akin to recklessness" is needed implicate Eighth Amendment protections. *Arnett*, 658 F.3d at 751. "Medical

malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

To the extent that Plaintiff claims unnecessary suffering due to the pain he experienced to his shoulder, there is no indication that there was any injury, serious or otherwise. Furthermore, the record suggests that the Plaintiff's pain persisted for something less than two hours and when he complained and then claimed that he should be cuffed in front of his body, Lt. Buchanan asked that Defendant Ward inquire as to whether a physician had authorized alternative cuffing. (Doc. 111-1, pp. 8-9). Plaintiff has failed to provide support for any claim that Defendant Ward was deliberately indifferent to a serious condition involving an injury to Plaintiff's shoulder.

Turning to the issue of Plaintiff's abdominal issues, as a general matter, a nurse can, and indeed must, defer to a treating physician's instructions. *Reck*, 27 F.4th at 483. At the same time, it is true that a nurse may not unthinkingly defer to physician's recommendations or treatment and ignore obvious risks to an inmate's health. *See Berry v. Peterman*, 604 F.3d 435, 443 (7th Cir. 2010) (a nurse's deference to physician "may not be blind or unthinking, particularly if it is apparent that the physician's order will harm the patient"). "Nurses, like physicians, may thus be held liable for deliberate indifference where they knowingly disregard a risk to an inmate's health." *Perez v. Fenoglio*, 792 F.3d 768, 779 (7th Cir. 2015). Here, there is no evidence that Defendant Ward blindly followed the physician's assessment of whether Plaintiff's existing or potential for the development of new hernias warranted an alternative cuffing permit. In fact, Plaintiff has not pointed to evidence that Defendant Ward was aware of the exact nature of Plaintiff's

condition or that he had been scheduled by Dr. Shah for a related medical furlough later that day. Thus, there is no support for the notion that Defendant blindly or unthinkingly followed along in Dr. Shah's treatment of the Plaintiff.

Relatedly, the Plaintiff notes and the record confirms Plaintiff had been previously scheduled by Dr. Shah to have his hernia condition assessed by a specialist later in the day of February 27, 2019. (Doc. 1, p. 78). This suggests that Plaintiff's complaint of hernia related issues had not fallen on tone-deaf ears.  But the authorization for or the scheduling of the appointment for an assessment by a specialist also suggests that Dr. Shah was not able to fully assess the nature and extent of Plaintiff's medical condition. Likewise, there is nothing in the record to suggest Dr. Shah was concerned, or that Defendant Ward was made aware, Plaintiff might suffer unnecessary pain or experience the expression of more hernias if not alternatively handcuffed. "Even objective recklessness—failing to act in the face of an unjustifiably high risk that is so obvious that it should be known—is insufficient to make out a claim. Instead, the Supreme Court has instructed us that a plaintiff must provide evidence that an official actually knew of and disregarded a substantial risk of harm." *Petties v. Carter*, 836 F.3d 722, 728 (C.A.7 (Ill.), 2016) In fact, officials can avoid liability by proving they were unaware even of an obvious risk to inmate health or safety. (*Id*) So, in the setting presented here, Defendant Ward cannot be said to be deliberately indifferent if she fails to render treatment for a discreet and medically undiagnosed risk for which Dr. Shah sought, but had not yet received, a specialist's advice and care.

Similarly, regarding Plaintiff's claim of unnecessary suffering due to his abdominal issues, while serious, were not, according to the record, complained of until

about two and half hours into a three-hour period of being handcuffed behind his back. (Doc. 111-1, p.8) The Plaintiff has presented no evidence that Defendant Ward was aware of his pain or in what way it was related to his existing hernia until he complained to Lt. Buchanan that his abdomen was painful and claimed he had a physician-authorized permit to be cuffed in front of his body. And, notably, the period of suffering in the presence of Defendant Ward was short. By all accounts, whatever abdominal pain the Plaintiff suffered in Defendant Ward's presence it was endured for less than one hour. And, when made aware of Plaintiff's pain, the record suggests that Defendant Ward inquired as to whether a physician had ordered the Plaintiff to be permitted to be alternatively handcuffed to accommodate his complained of abdominal pain. Accordingly, the Court finds that this record does not demonstrate that whatever delay can be attributed to Defendant Ward resulted in an exacerbation of Plaintiff's suffering or that she was deliberately indifferent to Plaintiff's condition.

Furthermore, there is nothing in the record to support a finding that the Defendant Ward ignored a known medical risk, such as imminent expression of additional hernias. To the contrary, she made the effort to learn whether the physician in charge gave Plaintiff an alternative cuffing permit. The physician had not ordered that such a permit be granted, and it was beyond Defendant Ward's authority as a nurse to contravene a physician's decision not to grant that permit. There is no disagreement that the special use of restraints for medical reasons, such double cuffing, must be evaluated and issued through permit by a medical doctor. (Doc. 111-2, p. 4). Likewise, there is no contest that Defendant Ward, as a nurse, has no authority to issue a medical permit nor, importantly,

the authority to direct correctional staff on how to handcuff inmates. (Docs. 111-1, pp. 14-15; 111-2, pp. 2, 4).

## Conclusion

The Court finds that there exists no genuine issue of material of fact and that, as discussed above, summary judgment is appropriate. However, the Court does not, by granting Defendant Ward's Motion for Summary Judgment, intend to deny or diminish the existence, nature or extent of Plaintiff's hernias or the pain experienced because of them, but there is not an evidentiary record that could support a verdict in favor of the Plaintiff or a finding that Defendant Ward was deliberately indifferent to Plaintiff's condition.

## Disposition

Defendant Ward's Motion for Summary Judgment (Doc. 111) is **GRANTED.** Clerk is directed to enter judgment in favor of Defendant Ward and close the case.

**IT IS SO ORDERED.**

Dated: September 28, 2024

_____
DAVID W. DUGAN
United States District Judge